CARL SHELTON
1809 Prince Street, Apt. B
Berkeley, CA 94703
(510)677-7353

IN PRO PER for Plaintiff and the similarly
situated African American members of the Plaintiff Class



IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

1st DIVISION

| | |
|---|---|
| CARL SHELTON, MLF 15346, AND THE SIMILARLY SITUATED AFRICAN AMERICAN MEMBERS OF THE PLAINTIFF CLASS,<br><br>Plaintiffs,<br><br>vs.<br><br>PATRICK J. MULLIGAN, ESQ., AND THE MULLIGAN LAW FIRM, MATHEW L. GARRETSON, ESQ., AND THE GARRETSON LAW FIRM AKA THE GARRETSON RESOLUTION GROUP,<br><br>Defendants. | Case No.: C 14-4267<br><br>CIVIL ACTION KAW |

### COMPLAINT

Plaintiff and the similarly situated African American members of the Plaintiff Class in the above-captioned action, allege, as follows:

### JURISDICTION

1. Jurisdiction of the federal court exists pursuant to 28 U.S.C. §§ 1343 et seq., since this is a civil action arising under the laws and Constitution of the United States. This action involves a violation of federal law 42 U.S.C. § 1981.

### PARTIES

2. At all relevant times herein mentioned, plaintiff CARL SHELTON, MLF 15346, has been, and is a resident of Alameda County, California. Plaintiff SHELTON was a member of the certified class of

1  Plaintiffs which brought suit against Pharmaceutical Drug Manufacturer, ELI LILLY, alleging that they had
2  contracted sugar diabetes from Zyprexa, a drug made by ELI LILLY that has been prescribed for their use
3  by their primary and/or personal care physicians. Plaintiff SHELTON is a citizen of the United States of
4  America of African American descent and race. Plaintiff contends that defendants singled out him and
5  the other similarly situated African American members of the former certified class of plaintiffs (in the
6  underlying lawsuit against ELI LILLY out of which the instant action has arisen) solely because of their
7  race, for differential treatment, to wit:

8      They were denied the same opportunity as the white members of the (former) certified class of
9  plaintiffs to apply for compensation from the Extra-Ordinary Injury Fund set up for members of the
10 (former) certified class who suffered catastrophic injury (plaintiff SHELTON's lower left leg was amputated
11 as a result of complications which developed due to the diabetic condition he contracted as a direct result
12 of having taken Zyprexa) all as a part of a program of racial discrimination.

13     3.   Defendants Patrick J. Mulligan, Esq. and the Mulligan Law Firm acted as Plaintiff's Legal
14 Counsel in connection with the aforementioned lawsuit against ELI LILLY, as well as the settlement by
15 which that action was resolved for many of its clients. The defendants Law Firm office and/or principal
16 place of business was/is located in Dallas, Texas at all relevant times herein mentioned. Plaintiff and
17 Defendant Mulligan Law Firm previously entered into a written contract pursuant to which said Law Firm
18 promised to provide Plaintiff with its legal services in connection with the above-referenced lawsuit, in
19 exchange for which Plaintiff promised to pay Defendant for its legal services, in addition to the expense it
20 incurred during the course of, and/or within the scope of said representation.

21     4.   Defendant Matthew L. Garretson, Esq., and the Garretson Law Firm was/is the law firm
22 of the Administrator of the settlement funds with which we are herein concerned. Its office and/or
23 principal place of business was/is located at all relevant times herein mentioned, in Lincoln, Nebraska.

24     5.   Defendants were at all times relevant the co-conspirator, agent, employee, servant,
25 partner, joint venture, successor, assignee, employee, ratifier, vicariously liable, aider, or abettor of each
26 other Defendant with respect to the wrongful conduct alleged. Each was acting within the course and
27 scope of said conspiracy, agency, employment, and/or joint venture and with the permission and consent
28 of each other, and each is responsible and liable in some manner for the damages or injuries sustained or

threatened to be sustained by Plaintiffs.

6. Plaintiff brings this action not only on behalf of himself, but also behalf of the other similarly situated African American members of the certified class (of former plaintiffs) who have been subjected to the same and/or substantially similar actions of defendants, as described below. There are common questions of fact that cover the class and defendants treatment of the class, and a class action is the most expeditious and efficient judicial procedure available for addressing the legal claims being stated on behalf of the class.

## GENERAL ALLEGATIONS

7. Plaintiff SHELTON herein avers that he was first exposed to the actions (about which he has herein complained) shortly after he had been released from John Muir Hospital, following the amputation of his lower left leg.

8. When he got home he remembered that he had heard something about an Extra-Ordinary Injury Fund that had been established, pursuant to the terms of the proposed settlement (in which 5% of the $50,000,000.00 total dollar amount of the proposed settlement had been designated for this fund)

9. Plaintiff SHELTON called the HUFFINGTON Law Firm (his Legal Counsel in the ELI LILLY case) in order to get some information about how to submit an application to receive compensation from the Extra-Ordinary Injury Fund for the catastrophic (amputation) injury he had suffered due to complications attributable to the diabetic condition he had contracted from taking Zyprexa.

10. Plaintiff had found that the HUFFINGTON Law Firm staff was very evasive and would not provide him with a straight answer. Plaintiff had located an Extra-Ordinary Injury Fund application while going through the paperwork he had received as a member of the certified class of Plaintiffs which had brought suit against ELI LILLY. Plaintiff had made sure that he obtained a complete set of the records generated by the staff doctors at John Muir Hospital in Walnut Creek relating to the amputation of the lower left leg he had suffered at the time he was discharged.

11. Plaintiff had been troubled when he first learned about the Defendant's requirement that he and the other members of the certified class immediately execute and/or returned the Settlement and/or Release documents which were included in the "settlement packets" that had been provided

previously by both the Law Firms of their Legal Counsel (Huffington) and the settlement Administrator (Garretson)

12. And Plaintiff also had some reservation concerning the fact that the members of the certified class had been sternly admonished that they (the attorneys) had reached the stage of the case where the certified class members should not call or write them in order to get an update on the status of their individual cases because the firms would need to direct all their energy toward attaining a final resolution of the subject (proposal) settlement then pending.

13. Plaintiff decided that it was necessary for him to obtain the opinion of a professional concerning the above-mentioned procedures which had been invoked by the Law Firm of the legal Counsel and the Administrator of the Settlement Fund, so he called the Berkeley NAACP attorney, OLIVER JONES.

14. Attorney JONES basically just stated that Plaintiff should go ahead and submit the Extra-Ordinary Injury Fund application and the supporting documentation to the Firm of the Administrator of the Settlement Fund (The Garretson Law Firm).

15. Attorney JONES indicated that executing the subject settlement and/or release documents at that point in time would probably lessen the amount of paperwork by which the lawyers would have otherwise probably been overburdened, and/or possibly overwhelmed, neither of which alternative would be beneficial to the interests of the members of the certified class, including Plaintiff; and still further, he explained that in a case and/or class of that size, the position of the Attorneys was more than likely a positive, rather than a negative thing, in spite of the fact that the members of the certified class were being asked to sign-off on the lawsuit before it had been determined whether or not they were eligible to be compensated for having taken Zyprexa and, resultantly, having contracted diabetes; and, if so, what the amount of such compensation would be.

16. Shortly thereafter, Plaintiff returned the executed Settlement and/or Release documents, together with a completed Application (and supporting documentation) for the Extra-Ordinary Injury Fund for which 5% of the $50,000,000.00 had been designated.

17. Plaintiff then called the Mulligan Law Firm and spoke with a female staff person, whom he informed that he had all of his medical records, and he asked if they needed any more supporting

COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS

documentation. This female staff person replied "NO".

18. Within a few days, Plaintiff received a letter from the Garretson Law Firm (of the Administrator of the Settlement Fund) which thanked him for having promptly executed and/or returned the Settlement and Release documents.

19. The aforementioned "Thank You" letter did not make mention of the completed Extra-Ordinary Injury Fund application (and/or the supporting documentation by which it had been accompanied) despite the fact that it had not only been submitted at the same time as the Settlement and Release documents to which the Administrator's letter referred, but also it had been submitted together therewith, in the same envelope, in keeping with the suggestion made by attorney JONES with respect to same.

20. Plaintiff patiently awaited his next contact with the firms' referenced hereinabove, and that contact occurred when he received notification from the Law Firm of the Administrator that it had been determined that he had contracted diabetes from taking Zyprexa.

21. Resultantly, Plaintiff had been subsequently provided with a settlement check in the approximate amount of $2,800.00, as compensation therefore.

22. Plaintiff still had not, however, been provided with any information from either the Law Firm of the Settlement Administrator, and/or the Law Firm of Plaintiff's Legal Counsel concerning the Application for the Extraordinary Injury Fund he had previously submitted.

23. Plaintiff was ever mindful of the admonishment with which the members of the certified class had been provided previously by the subject Law Firms concerning verbal and/or written attempts to obtain information about their individual cases; and consequently, he endured a great number of sleepless nights, and anxiety ridden days after not having heard anything from either one of the Law Firms about his Extraordinary Injury Fund Application for an extended period of time.

Finally, when Plaintiff could no longer stand the suspense and/or mystery of not knowing what had happened regarding same, he composed a letter in the hopes of obtaining some much needed information concerning the fate of his Extra-Ordinary Injury Fund Application, which was sent to each of the Law Firms with which we are herein concerned a couple of weeks apart. (See the letter to the Law Firm of Plaintiff's Legal Counsel (HUFFINGTON), and the letter to the Law Firm of Settlement

1  Administrator (GARRETSON), which are attached as Plaintiff's Ex. A(1) and A(2), and are incorporated
2  by reference herein, as if fully set forth).

3      24.    Neither the Law Firm of Plaintiffs former Legal Counsel, NOR the Law Firm of the former
4  Administrator of the settlement fund bothered to reply to Plaintiff's letters of inquiry.

5      25.    Plaintiff also subsequently wrote a letters to the respective Offices of the Attorney
6  General of the States of Texas (HUFFINGTON) and/or Nebraska (GARRETSON) in order to complain
7  about the deliberately indifferent manner in which Plaintiff's case had been treated, and/or mishandled, to
8  date, by the Law Firms identified specifically hereinabove. Each of the Offices of the Attorney General
9  sent a reply to Plaintiff within a couple of weeks of having been contacted by Plaintiff. [Plaintiffs letters to
10 each of the Attorney General and the written replies they sent him with respect thereto are attached as
11 Plaintiff Ex. B(1), (2), (3), & (4)]

12     26.    Plaintiff herein avers that each one of the letters he had sent to the subject Law Firms of
13 his (former) Legal Counsel and/or Administrator of the Settlement Fund, as well as the letters he had sent
14 to the respective Offices of the Attorney Generals of the States of Texas, and/or Nebraska had been cc'd
15 to the Law Firms of his former Legal Counsel, and/or the Administrator of the Settlement Funds.

16     27.    Plaintiff herein asserts that much to his surprise and dismay he finally received another
17 letter from the Law Firm of the Settlement Administrator which stated that the claims of the members of
18 the certified class had been completely resolved and paid; and still further explained that the $179.00
19 check that was enclosed with the letter dated 6/9/2014, represented the payment of interest owed to
20 Plaintiff.

**FIRST CLAIM FOR RELIEF**
**(Violation of Civil Rights)**
**(42 U.S.C. § 1981)**

23     28.    The allegations stated above in Paragraph 1 through 27, inclusive, are incorporated
24 herein by this reference as if set forth in full.

25     29.    Plaintiff CARL SHELTON, MLF 15346 was denied the same opportunity as the white
26 members of the former plaintiff class to apply for compensation from the Extra-Ordinary Injury Fund by
27 defendant Patrick J. Mulligan and the Mulligan Law Firm because plaintiff SHELTON is of African
28 American descent and race.

30. Said wrongful acts, conduct and omission of defendant Patrick J. Mulligan, Esq. and the Mulligan Law Firm are violative of the civil rights of plaintiff, including those guaranteed by 42 U.S.C. § 1981.

31. As a direct and proximate result of the wrongful acts, conduct and omissions of the defendants, plaintiff SHELTON and the members of the plaintiff class have suffered and sustained damages, and continues to suffer and sustain damages.

32. Defendant Patrick J. Mulligan, Esq. and the Mulligan Law Firm's wrongful acts, conduct and omissions were willful and wanton and done with a reckless disregard of plaintiffs' rights and feelings, thereby entitling plaintiffs, and each of them, to an award of exemplary or punitive damages.

WHEREFORE, plaintiff and the class request relief as set forth below.

**SECOND CLAIM FOR RELIEF**
**(Violation of the State Equal Protection Clause)**
**(Cal. Const., Art. I, § 7)**

33. The allegations stated above in paragraph 1 through 32, inclusive, are incorporated herein by this reference as if set forth in full.

34. Defendant's actions, as described above, violate the Equal Protection Clause of the California Constitution because they improperly subject plaintiff and the class to discrimination on the basis of race.

WHEREFORE, plaintiff and the class request relief as set forth below.

**THIRD CLAIM FOR RELIEF**
**(Violation of the federal Equal Protection Clause)**
**(U.S. Const., Amendment XIV)**

35. The allegations stated above in paragraph 1 through 34, inclusive, are incorporated herein by this reference as if set forth in full.

36. Defendants' actions, as described above, violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution (U.S. Const., Amend. XIV) because they improperly subject plaintiff and the class to discrimination on the basis of race.

WHEREFORE, plaintiff and the class request relief as set forth below.

**FOURTH CLAIM FOR RELIEF**
**(Violation of Civil Rights)**
**(42 U.S.C. § 1981)**

37. The allegations stated above in Paragraph 1 through 36, inclusive, are incorporated herein by this reference as if set forth in full.

38. Plaintiff CARL SHELTON and the similarly situated African American members of the plaintiff class were denied the same opportunity as the white members of the (former) certified class of plaintiffs to apply for compensation from the Extra-Ordinary Injury Fund by defendant Garretson because plaintiff SHELTON is of African American descent and race.

39. Said wrongful acts, conduct and omissions of defendants Matthew L. Garretson, Esq. and the Garretson Law Firm are violative of the civil rights of plaintiff, including those guaranteed by 42 U.S.C. § 1981.

40. As a direct and proximate result of the wrongful acts, conduct and omissions, plaintiff SHELTON has suffered and sustained damages, continues to suffer and sustain damages.

41. Defendant Matthew L. Garretson, Esq. and the Garretson Law Firm's wrongful acts, conduct and omissions were willful and wanton and done with a reckless disregard of plaintiffs' rights and feelings, thereby entitling plaintiffs and the similarly situated African American members of the (former) certifies class of plaintiffs to an award of exemplary or punitive damages.

WHEREFORE, plaintiff and the class request relief as set forth below.

### FIFTH CLAIM FOR RELIEF
### (Violation of the State Equal Protection Clause)
### (Cal. Const., Art. I, § 7)

42. The allegations stated above in paragraph 1 through 41, inclusive, are incorporated herein by this reference as if set forth in full.

43. Defendant's actions, as described above, violate the Equal Protection Clause of the California Constitution because they improperly subject plaintiff and the class to discrimination on the basis of race.

WHEREFORE, plaintiff and the class request relief as set forth below.

### SIXTH CLAIM FOR RELIEF
### (Violation of the federal Equal Protection Clause)
### (U.S. Const., Amendment XIV)

44. The allegations stated above in paragraph 1 through 43, inclusive, are incorporated herein by this reference as if set forth in full.

45. Defendants' actions, as described above, violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution (U.S. Const., Amend. XIV) because they improperly subject plaintiff and the class to discrimination on the basis of race.

WHEREFORE, plaintiff and the class request relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for JUDGMENT in his favor, as well as in favor of the other similarly situated African American (former) members of the certified class of Plaintiffs and against the defendants, as follows:

**FIRST, SECOND, and THIRD CLAIMS FOR RELIEF**

**(AGAINST PATRICK J. MULLIGAN, ESQ., and THE MULLIGAN LAW FIRM)**

1. $100,000.00 in compensatory damages per each class member;

**FOURTH, FIFTH, and SIX CLAIMS FOR RELIEF**

**(AGAINST MATTHEW L. GARRETSON, ESQ., and THE GARRETSON LAW FIRM)**

2. $100,000.00 in compensatory damages per each class member;

**AS TO ALL OF THE DEFENDANTS**

3. Costs of suit incurred by Plaintiff in order to prosecute the instant action;
4. Punitive Damages in an amount according to proof at trial;
5. Such other and further relief as the Court deems proper.

Dated: 9/12/14

_____
CARL SHELTON, MLF 15346
In Pro Per for Plaintiff and the similarly situated
African American members of the Plaintiff class

CARL SHELTON, MLF 15346<br>
1809 Prince Street<br>
Berkeley, CA 94703

NEBRASKA STATE ATTORNEY GENERAL
Jon Bruning
2115 State Capital
Lincoln, NE 68509

Dear Sir and/or Madam:

  This letter is being written in order to inform your office of a disturbing development that has recently taken on the spectre of a disaster for me, personally; and I fervently believe that it may also be representative, by way of analogy, of the experience to which other members of the class (who have found themselves in the same and/or substantially similar position as mine) have been and/or are being subjected.
  I was one among several thousand individuals, nationwide, who became certified members of, and/or parties to a class action lawsuit brought against ELI LILLY Pharmaceutical Drug Company (manufacturer of a prescription drug called "Zyprexa") which alleged that the members of the class had been prescribed and taken "Zyprexa" and, thereafter, had contracted Sugar Diabetes.
  I was represented in that class action lawsuit by the Mulligan Law Firm (headed by Patrick J. Mulligan, Esq.) located in Dallas, Texas.
  I joined a majority of the member of the class who had agreed to a negotiated settlement of fifty million dollars ($50,000,000.00), five percent (5%) of which was earmarked for an Extraordinary Injury Fund (EIF). (The EIF was established so that people, who proved that they had suffered a catastrophic injury as a result of the complication caused by the diabetic condition which they contracted from the use of "Zyprexa", could be additionally compensated).
  Unfortunately, I was a member of this 'class within a class' by virtue of the fact that I had suffered a broken ankle which did not heal properly and, as a result of complications which arose from the diabetic condition I contracted from the use of Zyprexa, caused my lower left leg to be amputated below the knee.
  In June 2009, at the same time as I executed and returned the Settlement and Release Agreements with which I had been provided earlier, I submitted an Application (along with supporting documentation) in order to obtain monetary compensation from the Extraordinary Injury Fund.
  Almost immediately thereafter, I got a letter from the Law Firm of the Settlement Administrator thanking me for having executed and returned the Settlement and Release Agreements, but there was no mention of the receipt of the Extraordinary Injury Fund application.

    The Garretson Law Firm which operated as the Administrator of the General and/or Extraordinary Injury (Settlement) Funds has not, to date, communicated with me at all about the Extraordinary Injury Fund application I previously submitted.

    I finally got fed up with waiting for this firm to contact me earlier this year, and I wrote the firm a letter (please see the letter enclosed herewith) which I sent by certified mail with return receipt requested.

    The Garretson Law Firm has not bothered to respond to the aforementioned letter, thus heightening my fears and anxiety concerning the outcome of my Extraordinary Injury Fund application. It is for the foregoing reasons that I am communicating with your office in a last ditch effort to get some assistance that will help me to gain closure.

    Given the large number of people who were members of the affected class, I believe that it is highly likely that other members may have recently discovered themselves to be in the same predicament as mine; and accordingly, any action taken by your office to get the bottom of this matter would operate to benefit them as well!

    Thank you in advance for your efforts in reading and considering this request. I will look forward to receipt of your reply.

P.S.:
Early on in 2010, I received a settlement check of almost $3,000.00.

Dated: 1/9/14

Sincerely,

_____
CARL SHELTON, MLF15346

Cc: The Garretson Law Firm
    Nebraska State Bar Association

Page 2 of 2

STATE OF NEBRASKA
# Office of the Attorney General
2115 STATE CAPITOL BUILDING
LINCOLN, NE 68509-8920
(402) 471-2682
TDD (402) 471-2682
FAX (402) 471-3297 or (402) 471-4725

**JON BRUNING**
ATTORNEY GENERAL

January 29, 2014

Carl Shelton
1809 Prince St.
Berkeley, CA 94703

RE: Garretson Law Firm

Dear Mr. Shelton:

Thank you for your recent correspondence with our office. While we appreciate your attempts to understand and comply with Nebraska laws, we cannot provide the legal opinion you request. Statute provisions restrict the Nebraska Attorney General from providing legal advice to individuals.

You may want to consider contacting a private, licensed attorney for further information about your rights. You may also be able to find information in the Nebraska legal statutes available at your public library or via the Internet at www.nebraskalegislature.com.

We regret that we cannot be of greater assistance to you. Thank you for contacting us.

Sincerely,

JON BRUNING
Attorney General

Jeff
Consumer Protection Division

l1

*Printed with soy ink on recycled paper*



## ATTORNEY GENERAL OF TEXAS
### GREG ABBOTT

January 16, 2014

Mr. Carl Shelton
1809 Prince St. Apt. B
Berkeley, CA 94703

Dear Mr. Shelton:

Thank you for your recent letter. We appreciate your contacting the Office of the Texas Attorney General to share your concerns.

Please understand the role of this office is to advise and represent state entities and interests as specified in the Texas Government Code. Under Texas law, the Office of the Attorney General is prohibited from providing legal advice, analysis or representation to private individuals.

As you know, the State Bar of Texas is the agency with authority to regulate attorneys in Texas. Therefore, you may wish to continue working with the State Bar.

Additionally, the Client-Attorney Assistance Program (CAAP) of the State Bar of Texas assists clients and attorneys in resolving minor problems affecting their relationships. To contact CAAP, call (800) 932-1900.

You may also wish to discuss this matter with another private attorney. The Lawyer Referral Information Service (LRIS) within the State Bar of Texas can connect you with a lawyer in Texas with appropriate expertise. LRIS can be reached at (800) 252-9690 or (512) 463-1463. Through the LRIS, a person may have a 30 minute consultation by telephone or in person, depending on the subject matter, with an attorney for $20.

Again, thank you for writing. Please feel free to contact the Office of the Attorney General if we may be of further assistance.

Sincerely,

*Patricia Ruiz Davis* (signature)

Patricia Ruiz-Davis
Public Information & Assistance
Office of the Attorney General of Texas

CARL SHELTON, MLF 15346<br>
1809 Prince Street<br>
Berkeley, CA 94703

TEXAS STATE ATTORNEY GENERAL
Greg Abbott
300 W. 15th Street
Austin, TX 78701

Dear Sir and/or Madam:

    This letter is being written in order to inform your office of a disturbing development that has recently taken on the spectre of a disaster for me, personally; and I fervently believe that it may also be representative, by way of analogy, of the experience to which other members of the class (who have found themselves in the same and/or substantially similar position as mine) have been and/or are being subjected.

    I was one among several thousand individuals, nationwide, who became certified members of, and/or parties to a class action lawsuit brought against ELI LILLY Pharmaceutical Drug Company (manufacturer of a prescription drug called "Zyprexa") which alleged that the members of the class had been prescribed and taken "Zyprexa" and, thereafter, had contracted Sugar Diabetes.

    I was represented in that class action lawsuit by the Mulligan Law Firm (headed by Patrick J. Mulligan, Esq.) located in Dallas, Texas.

    I joined a majority of the member of the class who had agreed to a negotiated settlement of fifty million dollars ($50,000,000.00), five percent (5%) of which was earmarked for an Extraordinary Injury Fund (EIF). (The EIF was established so that people, who proved that they had suffered a catastrophic injury as a result of the complication caused by the diabetic condition which they contracted from the use of "Zyprexa", could be additionally compensated).

    Unfortunately, I was a member of this 'class within a class' by virtue of the fact that I had suffered a broken ankle which did not heal properly and, as a result of complications which arose from the diabetic condition I contracted from the use of Zyprexa, caused my lower left leg to be amputated below the knee.

    In June 2009, at the same time as I executed and returned the Settlement and Release Agreements with which I had been provided earlier, I submitted an Application (along with supporting documentation) in order to obtain monetary compensation from the Extraordinary Injury Fund.

    Almost immediately thereafter, I got a letter from the Law Firm of the Settlement Administrator thanking me for having executed and returned the Settlement and Release Agreements, but there was no mention of the receipt of the Extraordinary Injury Fund application.

The Mulligan Law Firm which acted as my legal counsel in the class action lawsuit settled against ELI LILLY has not, to date communicated with me at all about the Extraordinary Injury (Settlement) Funds application I previously submitted.

Earlier this year, I finally got tired of waiting to hear from the Mulligan Law Firm and I wrote the firm a letter (please see the letter enclosed herewith) which I sent by certified mail with return receipt requested.

The Mulligan Law Firm has not bothered to respond to the aforementioned letter, thus heightening my fears and anxiety concerning the outcome of my Extraordinary Injury Fund application. It is for the foregoing reasons that I am communicating with your office in a last ditch effort to get some assistance that will help me to gain closure.

Given the large number of people who were members of the affected class, I believe that it is highly likely that other members may have recently discovered themselves to be in the same predicament as mine; and accordingly, any action taken by your office to get the bottom of this matter would operate to benefit them as well!

Thank you in advance for your efforts in reading and considering this request. I will look forward to receipt of your reply.

P.S.:
Early on in 2010, I received a settlement check of almost $3,000.00

Dated: 1/9/14

Sincerely,

CARL SHELTON, MLF15346

Cc: The Mulligan Law Firm
    Texas State Bar Association

From:   CARL SHELTON         MLF15346
        1809 Prince St., Apt. B
        Berkeley, CA 94703

To    : THE MULLIGAN LAW FIRM
        Patrick J. Mulligan, Esq.
        4514 Cole Avenue, Suite 300
        Dallas, Texas 75205


Dear Mr. Mulligan,

   I was one of the clients that was recently represented by your Law Firm in the suit it filed against Eli Lilly, manufacturer of the drug called ZYPREXA.
   Pursuant to the settlement you negotiated on our behalf, I received a check of almost $3,000 in connection with my claim that I had contracted diabetes as a result of having used Zyprexa.
   At the same time as I returned the consent package I executed in 2009, I also submitted an EIF claim along with supporting documentation.
   To date, I still have not received any information regarding the outcome of that aspect of my case from either your law firm, or the Garretson Law Firm, Office of the Settlement Administrator.
   I suffered an amputation of my lower left leg as a result of, and/or attributable to my diabetic condition.
   Would you please provide me with any information you may have concerning the resolution of my EIF claim?
   I am hopeful that you will be able to provide me with the above-referenced information so that I can finally put this matter behind me.
   Thanks in advance for your cooperation.

Dated:  5/30/13

                                          Sincerely,

                                          _____
                                          CARL SHELTON   MLF15346